IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Fort Pierce Division)

| | |
|---|---|
| CONNIE LYNNE MADRAY and<br>MELODY HOLDEN,<br><br>Plaintiffs,<br><br>vs.<br><br>PUBLIX SUPERMARKETS, INC.,<br>a Florida corporation,<br><br>Defendant. | Case No. 96-14235-Civ-Roettger<br>Magistrate Judge Lynch<br><br><br><br><br><br>Plaintiff's Supplemental<br>Memorandum of Law |

**NIGHT BOX FILED**
SEP 2 3 1998
CARLOS JUENKE
CLERK, USDC / SDFL / FTL

Plaintiffs, Connie Lynn Madray and Melody Holden, in accordance with the Court's Order entered September 10, 1998, hereby file their Supplemental Memorandum of Law in Response to Defendant's Supplemental Memorandum, filed September 4, 1998.

As is noted in Defendant's Supplemental Memorandum Addressing Recent Supreme Court Decisions Affecting the Motion for Summary Judgment (hereafter "Supplemental Memorandum"), the United States Supreme Court recently addressed the issue of employer liability where a supervisor is alleged to have created a sexually hostile working environment. *See Burlington Industries, Inc. v. Ellerth*, ___ U.S. ___, 118 S.Ct. 2257, 1998 WL 336326 (U.S. June 26, 1998); *Fargaher v. City of Boca Raton*, ___ U.S. ___, 118 S.Ct. 2275, 1998 WL 336322 (U.S., June 26, 1998). As shown more fully below, the holdings of these cases support the denial of Publix's Motion for Summary Judgment.

1

### Employer liability for hostile environment harassment created by supervisors

In both *Ellerth* and *Faragher*, the Supreme Court held that and employer is subject to vicarious liability for an actionable hostile environment created by a supervisor with immediate, or successively higher, authority over the employee, subject to an affirmative defense that: (a) the employer exercised reasonable care to prevent such harassment, and (b) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer.

In the case at bar, there is no dispute that — by virtue of his Store Manager position — Defendant Selph, was a "supervisor with immediate, or successively higher authority" over the Plaintiffs. Thus, under *Ellerth* and *Faragher*, Publix is vicariously liable for the sexually hostile work environment caused by Selph, unless it can avail itself of the affirmative defense enunciated by the Supreme Court. Moreover, for purposes of summary judgment, the facts supporting the affirmative defense must be undisputed; otherwise, the availability of the affirmative defense is a question for the jury.

Publix would have the Court believe that it is entitled to the affirmative defense as a matter of law based on the Plaintiffs' alleged failure to utilize the complaint mechanism described in Publix's sexual harassment policy, as well as its alleged prompt and effective response once District Manager Rhodes was notified about Plaintiffs' complaints in August 1995. *See* Supplemental Memorandum, at 3.

However, a careful review of the record in this case reveals that Plaintiffs complained about the sexual harassment by Defendant Selph to numerous mid-level managers in Store 118

before one of the managers, Second Assistant Manager Gary Priest, notified District Manager Rhodes about the situation in August 1995. *See* Statement of Facts in Support of Plaintiffs' Responses to Motions for Summary Judgment (hereafter "Plaintiffs' Statement of Facts"), at 8-11 (describing Plaintiffs pre-August 1995 complaints to Second Assistant Managers Gary Priest and Darlene Clark and Bakery Manager David Neff). Although he initially did nothing in response to Plaintiffs' complaints, Mr. Priest finally took it upon himself to notify Mr. Rhodes after he witnessed Defendant Selph hugging Plaintiff Holden in the manager's office and rubbing her back. Indeed, when Plaintiff Holden finally met with District Manager Rhodes in August 1995, Mr. Rhodes seemed very upset that he was never notified about her prior complaints about Selph, since "the managers [to whom Holden previously complained] knew better and should have let him know what was going on." *See* Statement of Facts, at 10.

Given these undisputed facts regarding Plaintiffs pre-August 1995 complaints to the mid-level managers at Store 118, and the collective failure of these managers to take any remedial action in response to the complaints until several months later when Mr. Priest finally contacted Mr. Rhodes, it cannot be said as a matter of law that Publix "exercised reasonable care to prevent such harassment" or that the Plaintiffs "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer." A factfinder could reasonably conclude that the supervisory personnel to whom Plaintiffs complained before August 1995 were appropriate persons to speak with about sexual harassment in the workplace, and that these managers had an affirmative duty to investigate and/or remedy the sexual harassment once they

3

received Plaintiffs complaints.[1] Thus, regardless of what actions Mr. Rhodes may have taken in August 1995, Publix's liability in this case turns on the knowledge and actions of its mid-level managers at Store 118 in the several months before Mr. Rhodes was notified about Plaintiffs complaints.

In sum, the evidentiary record in this case supports a strong inference that the managers to whom Plaintiffs reported Selph's harassment before August 1995 had a duty under Publix's sexual harassment policy to either take action on the complaint themselves, or refer the complaint to higher management outside of the store for appropriate remedial action. Under the holdings of *Ellerth* and *Faragher*, the existence of these disputed material facts regarding Publix's affirmative defense should mandate the denial of Publix's Motion for Summary Judgment. Publix's duty to remedy the sexual harassment by Defendant Selph arose months before Plaintiffs' complaints were referred to District Manager Rhodes, and any alleged remedial action on the part of Rhodes was therefore too late to absolve Publix from Title VII liability.

### Sexual harassment may be within the course and scope of employment

Publix quotes *Ellereth* for the proposition that "[t]he general rule is that sexual

---

[1] On this point, it is significant that the Harassment Complaint Form that Publix provided to Plaintiffs also identifies "Department Head" — a position lower than Store Manager — as someone with whom the employee should feel comfortable discussing sexual harassment. Defendant's Index, Exhibits 6 and 7 (Plaintiffs' Harassment Complaint Forms).

Moreover, in addition to its policy against sexual harassment, and immediately preceding the sexual harassment policy in its employee handbook, Publix has an "Open Door Policy," which states as follows: "[i]f something bothers you, or if you need clarification of a Publix policy or procedure, please talk to a manager about it. Remember, as a Publix associate, you can talk to *anyone in management*" (emphasis added). The Open Door Policy goes on to identify "your immediate Supervisor/Manager/Department Head" as appropriate persons with whom problems or questions can be discussed.

4

harassment by a supervisor is not conduct within the scope of employment." Supplemental Memo, at 1 (citing *Ellerth*). However, contrary to Publix's assertion that "this basis of liability has been rejected by the Supreme Court," Supplemental Memo, at 1, the *Faragher* Court specifically noted that "[t]here are instances, of course, where a supervisor engages in unlawful discrimination with the purpose, mistaken or otherwise, to serve the employer." *Faragher*, 1998 WL 336326, at *9 (citations omitted).

Given Defendant Selph's deposition testimony, the case at bar may be one of the rare instances in which a supervisor believed himself to be acting within the course and scope of his employment while he sexually harassed subordinate female employees. Selph admitted in his deposition that many of Plaintiffs allegations were in fact true, and that he had engaged in such behavior because he "was trying to establish a family-type atmosphere at Publix that you could come to and have a good time and enjoy the work and want to be there." Plaintiffs' Statement of Facts, at 4-5 (citing Selph's deposition). Selph felt that such actions was consistent with his management style, because he "felt they would do a better job if they enjoyed their work." *Id.*

When questioned regarding his specific behavior towards the Plaintiffs, Selph stated that the reason he hugged the Plaintiffs and blew in the ears was because it was part of his management style to engage in such behavior in order to build employee morale in his store and increase employee productivity. *Id.* His efforts to build employee morale in Store 118 were part of Selph's efforts to perform his job as Store Manager at "the highest possible level. Selph felt that higher employee productivity would lead to higher profits for Publix, since "anytime you can make something better, its bound to increase your profits." *Id.* Selph also testified that his bonuses as a Publix manager were based on the profitability of his store, and that he had received

5

the highest bonuses of his Publix career while employed at Store 118. *Id.*

Given the above testimony by Selph, there is clearly a jury question as to whether he believed himself to be acting in the course and scope of his employment when he harassed the Plaintiffs at Store 118, and whether Publix therefore can be held directly liable for Selph's conduct.

### Defendant Selph's conduct created an actionable hostile environment

In its Supplemental Memorandum, Publix asserts that in light of the Supreme Court's pronouncement in *Oncale v. Sundowner Offshore Services, Inc.*, ___ U.S. ___, 118 S.Ct. 998 (1998) that Title VII is not a "general civility code," the actions of Defendant Selph do not rise to "objectively offensive" level required to support a hostile environment claim. This assertion is based on Publix's characterization of Selph's treatment of the Plaintiffs as "ordinary socializing in the workplace" "not overtly sexual in nature." Supplemental Memorandum, at 5 (citing *Oncale*).

However, even a cursory review of Plaintiffs' deposition testimony reveals that there was nothing "ordinary" about Selph's behavior toward Plaintiffs, and it is disingenuous for Publix to characterize Selph's behavior as innocuous "intersexual flirtation."

On a regular basis, both Plaintiffs were subjected by Selph to unwanted gropings and full-body hugs, as well as kisses, attempted kisses, blowing in their ears, and touching and/or rubbing of their shoulders, backs, hips and legs. On several occasions, Selph went so far as to wet his finger in his mouth and stick it in Plaintiffs ears. Selph's behavior would take place all over the store, in full view of the other employees and managers. His behavior was so pervasive he would even gesture to Plaintiffs to come and hug him while he made his rounds through the store,

hugging them regardless of whether they seemed remotely interested and despite the fact that they never solicited or returned his affections. *See generally* Plaintiffs' Statement of Facts, at 1-7 (describing hostile environment created by Selph's actions toward Plaintiffs).

In addition to forcing them to run a literal gauntlet of unwelcomed physical contacts in their workplace, Selph made occasional off color comments as well, some of which had an arguably sexual connotation, and all of which Plaintiffs found to be offensive. *Id.*

Applying the non-exhaustive list of factors from *Harris v. Forklift Systems, Inc.* to the totality of circumstances to which Plaintiffs were subjected at Store 118, it can be reasonably inferred that Plaintiffs' workplace was both "hostile" and "abusive" as a result of Selph's actions, and that the terms and conditions of their employment were thereby affected. *See Harris*, 510 U.S. 17, 23, 114 S.Ct. 367, 371 (1009) (factors include "the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. . . . while psychological harm, like any other relevant factor, may be taken into account, no single factor is required").

Given Plaintiffs' undisputed deposition testimony, it is also safe to conclude that Plaintiffs are not simply thin-skinned or overly sensitive in their reactions to Selph's obnoxious behavior, and that many reasonable women in the 1990's would be similarly offended by such inappropriate workplace behavior by their male supervisors. *See Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991) (seriousness or pervasiveness of the sexually offensive environment must be analyzed from the victim's, rather than perpetrator's, perspective; conduct that many men consider unobjectionable may offend many women).

## Conclusion

For all of the foregoing reasons, the recent decisions of the Supreme Court in *Ellerth* and *Faragher* support the denial of Publix's Motion for Summary Judgment.

Respectfully Submitted,

_____          (for) _____
Christopher C. Sharp                        Erika Deutsch Rotbart
Fla. Bar No. 996858                         Fla. Bar No. 047686
Christopher C. Sharp, P.A.                  Rotbart & Deutsch, P.A.
1318 S.E. 1st Avenue                        21845 Powerline Road, Suite 201
Fort Lauderdale, Florida 33316              Boca Raton, Florida 33433
Telephone: (954) 728-9977                   Telephone: (561) 361-8010
Telecopier: (954) 763-4666                  Telecopier: (561) 361-8086

Co-Counsel for Plaintiffs

Dated: September 28th, 1998

## Certificate of Service

I HEREBY CERTIFY that a true copy of the above and foregoing was served by telecopier and mail this 28th day of September, 1998, upon the following counsel of record:

John Edward-Alley, Esq.                     William S. Reese, Esq.
Amy Littrell, Esq.                          Lane Reese et al.
Alley and Alley/Ford & Harrison LLP         Attorneys for Defendant Selph
Attorneys for Defendant Publix              2600 Douglas Road
205 Brush Street                            Suite 304
P.O. Box 1427                               Coral Gables, Florida 33134
Tampa, Florida 33601

_____
Christopher C. Sharp