Clarence Maddox
Clerk, U.S. District Court
300 S. Sixth St., 2nd Floor
Ft. Pierce FL ~~34958~~ 34950



May 18, 2000

RE: 98-5802 -CC  Madray v. Publix Supermarkets
DC DKT NO: 96-14235 CV-NCR

TO: Clarence Maddox

CC: Erika Deutsch Rotbart

CC: Christopher C. Sharp

CC: Amy W. Littrell

CC: James Morgan Craig

CC: Paul H. Field

CC: Administrative File

# United States Court of Appeals

Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

In Replying Give Number
Of Case And Names of Parties

May 18, 2000

Clarence Maddox
Clerk, U.S. District Court
300 S. Sixth St., 2nd Floor
Ft Pierce FL 33158

RE: 98-5802 -CC    Madray v. Publix Supermarkets
DC DKT NO.: 96-14235 CV-NCR

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

Also enclosed are the following:
    Original Exhibits, consisting of one folder
    Original record on appeal or review, consisting of four volumes.

Please acknowledge receipt on the enclosed copy of this letter.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: Lisa Hester (404) 335-6134

Encl.

MDT-1 (1-1999)

# United States Court of Appeals

For the Eleventh Circuit

No. 98-5802

District Court No. 96-14235-CIV-NCR

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

APR 1 3 2000

THOMAS K. KAHN
CLERK

CONNIE LYNN MADRAY and
MELODY HOLDEN,

Plaintiffs-Appellants,

versus

PUBLIX SUPERMARKETS, INC., et al.,

Defendants-Appellees.

A True Copy - Attested:
Clerk, U.S. Court of Appeals
Eleventh Circuit
By: _____
Deputy Clerk
Atlanta, Georgia

Appeal from the United States District Court
for the Southern District of Florida

Before BIRCH and MARCUS, Circuit Judges, and ALAIMO*, Senior District Judge.

JUDGMENT

This cause came to be heard on the transcript of the record from the United States District Court for the Southern District of Florida, and was argued by counsel;

UPON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the order of the District Court appealed from in this cause be and the same is hereby AFFIRMED;

IT IS FURTHER ORDERED THAT plaintiffs-appellants pay to defendants-appellees, the costs on appeal to be taxed in accordance with the Fed.R.App.P. 39.

---

*Honorable Anthony A. Alaimo, Senior U.S. District Judge for the Southern District of Georgia, sitting by designation.

Entered: April 13, 2000
For the Court: Thomas K. Kahn, Clerk
By: _____
Deputy Clerk

ISSUED AS MANDATE: MAY 1 8 2000

**Connie Lynn MADRAY and Melody Holden, Plaintiffs–Appellants,**

v.

**PUBLIX SUPERMARKETS, INC., Defendants–Appellees.**

No. 98–5802.

United States Court of Appeals, Eleventh Circuit.

April 13, 2000.

Female employees brought Title VII action against employer alleging hostile environment sexual harassment. The United States District Court for the Southern District of Florida, No. 96-14235-CV-NCR, Norman C. Roettger, Jr., J., 30 F.Supp.2d 1371, entered summary judgment in favor of employer. Employees appealed. The Court of Appeals, Birch, Circuit Judge, held that: (1) employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; (2) employer was on notice of alleged sexual harassment when employees contacted persons identified in employer's sexual harassment policy, not when they complained informally to various mid-level managers; and (3) employees unreasonably failed to take advantage of opportunities provided by employer to correct alleged sexual harassment.

Affirmed.

### 1. Civil Rights ⚖=167

Coemployee's complaint to mid-level managers about store manager's alleged sexually harassing behavior did not provide employer effective notice of store manager's alleged sexual harassment of plaintiff employees, for purposes of determining whether employer established affirmative defense to Title VII liability. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

### 2. Civil Rights ⚖=371

Generally, an employer is subject to vicarious liability under Title VII to a victimized employee for an actionable hostile environment created by a supervisor with immediate or successively higher authority over the employee; however, an affirmative defense exists under which employers have a safe harbor from vicarious liability when the victimized employee suffered no adverse tangible employment action. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

### 3. Civil Rights ⚖=167

To successfully interpose an affirmative defense to Title VII liability for sexual harassment by a supervisor, an employer must satisfy two elements: (1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

### 4. Civil Rights ⚖=167

Dissemination of an employer's anti-harassment policy is fundamental to meeting the requirement, necessary to establish the affirmative defense to Title VII liability for sexual harassment by a supervisor, of exercising reasonable care in preventing sexual harassment. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

Synopsis, Syllabi and Key Number Classification
COPYRIGHT © 2000 by WEST GROUP

The Synopsis, Syllabi and Key Number Classification constitute no part of the opinion of the court.

### 5. Civil Rights ⟬167

Employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, as required to establish affirmative defense to Title VII liability for alleged sexual harassment by supervisor, by establishing complaint procedures identifying various persons to whom complaints could be made, even if only one of those persons was in employees' store, and that person was the alleged harasser; procedures identified and provided phone numbers of persons to whom complaints could be made, and one of those persons visited store once a week. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

### 6. Civil Rights ⟬167

An employer's size, location, geographic scope, organizational structure, and industry segment are just some of the characteristics that impact the analysis of whether the complaint procedures of an employer's anti-harassment policy adequately fulfill Title VII's deterrent purpose, for purposes of determining whether the employer has established an affirmative defense to liability for sexual harassment by a supervisor. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

### 7. Civil Rights ⟬167

Employer was on notice of alleged sexual harassment by supervisor, for purposes of determining whether it took reasonable care to correct alleged harassment, as required to establish affirmative defense to Title VII liability, when employees contacted persons identified in employer's sexual harassment policy as persons with whom complaints should be registered, not when employees complained informally to various mid-level managers not listed in policy. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

### 8. Civil Rights ⟬167

For purposes of determining whether an employer has established an affirmative defense to Title VII liability for sexual harassment by a supervisor, once the employer has promulgated an effective anti-sexual harassment policy and disseminated that policy and associated procedures to its employees, then it is incumbent upon the employees to utilize the procedural mechanisms established by the company specifically to address problems and grievances. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

### 9. Civil Rights ⟬167

Even if a sexual harassment complaint to second assistant manager could have put employer on notice of alleged sexual harassment by supervisor, for purposes of employer's affirmative defense to Title VII liability, employee's complaint to such manager at restaurant during party for departing employee that supervisor's conduct "made me sick" was insufficient to provide such notice; employee failed to disclose extent or precise nature of supervisor's alleged behavior. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

### 10. Civil Rights ⟬167

Even if a sexual harassment complaint to second assistant manager could have put employer on notice of alleged sexual harassment by supervisor, for purposes of employer's affirmative defense to Title VII liability, employee's statement to such manager during dinner at restaurant attended by several other employees, relaying a particular incident she found offensive, together with manager's alleged witnessing of second incident

6-cv-14235-NCR Document 156 Entered on FLSD Docket 06/13/2000 Pa
MADRAY v. PUBLIX SUPERMARKETS, INC.     2051

of harassment, were insufficient to provide such notice; employee did not indicate ongoing pattern of sexual harassment or that she wanted manager to take action. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

## 11. Civil Rights ⚖=167

Even if bakery manager's knowledge of alleged sexual harassment by supervisor could have put employer on notice of alleged sexual harassment by supervisor, for purposes of employer's affirmative defense to Title VII liability, bakery manager's witnessing of incident of alleged sexual harassment by supervisor did not provide employer with such notice, inasmuch as employee assured bakery manager she would report alleged harassment to employer through representative designated in employer's sexual harassment policy. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

## 12. Civil Rights ⚖=167

Employees unreasonably failed to take advantage of opportunities provided by employer to correct alleged sexual harassment committed by their supervisor, and, thus, employer was not liable under Title VII, where employees complained to mid-level managers informally instead of complaining to persons designated in employer's sexual harassment policy, employees did not fully inform managers of extent of alleged harassment, employees did not ask managers to take action, and one employee declined manager's assistance, saying she would take action herself. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

## 13. Civil Rights ⚖=167

An employer cannot use its own policies to insulate itself from Title VII liability for sexual harassment by a supervisor by placing an increased burden on a complainant to provide notice beyond that required by law. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

---

Appeal from the United States District Court for the Southern District of Florida.

Before BIRCH and MARCUS, Circuit Judges, and ALAIMO *, Senior District Judge.

BIRCH, Circuit Judge:

Connie Lynn Madray and Melody Holden (collectively, "plaintiffs") appeal the district court's order granting summary judgment to Publix Super Markets, Inc. ("Publix") and dismissing their claims against Publix for hostile environment sexual harassment, in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et seq., as amended. The plaintiffs argue that Publix is not entitled to the affirmative defense to vicarious liability for sexual harassment announced by the Supreme Court in *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), (the "*Faragher* affirmative defense") because questions persist about (1) whether Publix exercised due care to prevent sexual harassment in its store, (2) when Publix became aware of the sexual harassment to which the plaintiffs were being

---

* Honorable Anthony A. Alaimo, Senior U.S. District Judge for the Southern District of Georgia, sitting by designation.

subjected, and (3) whether the plaintiffs utilized the appropriate procedures for reporting sexual harassment.[1]  For the reasons that follow, we AFFIRM the holding of the district court.

## I. BACKGROUND

Holden has worked in Publix store number 118 in Okeechobee, Florida since 1987. She continues to be employed as a scan price clerk in store 118. Madray worked at store 118 from 1990 until April 1997, when she moved to Georgia. She is now employed by Publix as a part-time stock clerk in Athens, Georgia. Ronald Selph became the manager of store 118 in 1994. As store manager, Selph was the highest ranking employee in store 118. Thus, he exercised supervisory authority over both Holden and Madray until he was transferred to store 61 as an assistant manager in September 1995.

From the commencement of his employment as manager of store 118, Selph made a practice of hugging and patting his employees. Selph explained that he engaged in this behavior in an effort to promote a family atmosphere at the store and increase productivity. The plaintiffs were not initially offended by Selph's behavior; however, over time, the plaintiffs contend that Selph's conduct escalated and became offensive.[2]

The plaintiffs first complained about Selph's harassing behavior to three mid-level managers at store 118. Holden testified that, at a party for a departing employee, she told Darlene Clark, a Second Assistant Manager, "[t]hat it made me sick for [Selph] to hug me and touch me and kiss me." R3–82, Deposition of Melody Holden, at 58. However, Holden did not request that Clark take any action as a result of her comment. *See id.* at 59. Rather, Holden "hop[ed] that [Clark would] take it in her own hands and do it because she's in management." *Id.* at 59.

About a month or two later, Holden testified that, while in a restaurant with several other employees of store 118, she told Second Assistant Manager Gary Priest that Selph had "grabbed me and ducked me over and kissed me on the neck." *Id.* at 62. While Holden did not request that Priest undertake any action regarding her complaint, she did tell him that she did not know what do about Selph's behavior. *See id.* at 63. Holden stated that Priest was "shocked" by her account of Selph's behavior and "didn't know what to say either." *Id.* at 62–63.

1. The plaintiffs also argue that a genuine issue of material fact exists as to whether the harassing behavior to which they were subjected by their manager was sufficiently severe or pervasive to satisfy the requirements for hostile environment sexual harassment. Although the district court noted "that the alleged behavior f[ell] short of other conduct that courts have held did not constitute a hostile environment," R4–144 at 8 n. 3; *Madray, et al. v. Publix Super Markets, Inc.,* 30 F.Supp.2d 1371, 1375 n. 3 (S.D.Fla.1998), the district court neither made a specific finding of whether the conduct at issue in this case was sufficiently severe or pervasive to constitute hostile work environment sexual harassment nor did the district court base its judgment upon such a finding. We will not address this issue, but will assume *arguendo* that Selph's conduct constituted sexual harassment.

2. According to the plaintiffs, Selph's harassing behavior included groping, full-body hugs, rubbing his body against theirs in such a way that his genitals made contact with their body, kissing, blowing in their ear, wetting his finger in his mouth and sticking it in their ears, and rubbing their shoulders, backs, hips, and legs, as well as an array of suggestive and provocative comments. Because the question of whether this behavior amounted to hostile work environment sexual harassment is not appropriately before this court, we will not provide a detailed account of the alleged harassment.

Holden also testified that approximately two to three weeks before she lodged a formal complaint against Selph, David Neff, the Bakery Manager, witnessed an incident of inappropriate behavior by Selph. According to Holden, Neff told Selph "That's sexual harassment," but Selph responded that he did not care what Neff called it. *Id.* at 125-26. Holden stated that when she thanked Neff for trying to stop Selph's inappropriate behavior, she explained that she hoped he would stop since Neff had told him it was sexual harassment. Neff replied: "Well, if it doesn't, you let me know. And if it still continues, if you don't complain about it, then I have to as a manager." *Id.* at 126. Holden responded that she would talk to Madray and make arrangements to see District Manager Richard Rhodes.

[1] Approximately three or four days before Holden made her formal complaint, Priest actually witnessed Selph's inappropriate behavior towards Holden and made an effort to distract Selph from Holden. Additionally, Madray testified that a few days prior to lodging a formal complaint, Priest also witnessed Selph hugging her and said, "I've seen too much. We need to talk to Mr. Rhodes." R3-84, Deposition of Connie Lynn Madray, at 133. Subsequently, Holden requested that Priest call district manager Rhodes and set up an appointment so that the plaintiffs could complain about Selph's harassing behavior towards them. Rhodes met with the plaintiffs the next day and began an investigation. The plaintiffs agreed that Rhodes was responsive to their complaints and was very upset because "[h]e said that the managers knew better and should have let him know what was going on." R3-82 at 132. Upon completion of Rhodes' investigation, Selph was given a written warning, demoted to assistant manager, and transferred to a store in another city. After making the complaint neither plaintiff had any contact with Selph.[3]

Publix has promulgated a sexual harassment policy and disseminated it to employees in their employee handbook. The policy requires that the employees "bring [any complaints] to the attention of appropriate persons in Company Management.... [I]n order for the Company to deal with the problem, *we must report such offensive conduct or situations to the Store Manager, District Manager, or Divisional Personnel Managers.*" R2-67-Ex. 4 at 3. (emphasis in original).[4]

---

3. The plaintiffs also point to an incident where another female employee complained to mid-level managers about Selph's harassing behavior and they attempted unsuccessfully to handle the problem "in the store." R4-141-102 (Maria Chesser's statement). Meat Manager Steve Pitts suggested that this incident happened at least six months prior to the plaintiffs' complaint to Rhodes. *See* R4-141-88 (Steve L. Pitts 8/24/95 statement). The plaintiffs contend that this other employee's previous complaint to the mid-level managers provided Publix notice of Selph's sexual harassment as much as six months prior to their formal complaint. However, our conclusion that the plaintiffs' own complaints to the mid-level managers did not provide Publix effective notice of the harassment they were experiencing applies equally to the complaint of the other employee to mid-level managers. Thus, we conclude that the complaint of another employee to the mid-level manager in store 118 did not place Publix on notice of Selph's sexually harassing behavior.

4. The pertinent part of Publix's "Statement Concerning Prohibited Harassment, Including Sexual Harassment" consists of the following:

   To help ensure that none of us ever feel we are being subjected to harassment, and in order to create a comfortable work environment, the Company prohibits any offensive physical, written or spoken conduct regarding any of these items, including conduct of a sexual nature.
   ....

Additionally, Publix maintained an "Open Door Policy" which was also published in the employee handbook. This policy encouraged employees to talk to a manager about any "problems or misunderstandings." *Id.* at 1–2. This policy reminded employees that they could "talk to anyone in management," but encouraged them to first discuss their problem with their "immediate Supervisor" and then proceed to "the next highest level of management." *Id.*[5]

The plaintiffs filed suit against Publix and Selph, alleging hostile work environment sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[6] The plaintiffs claimed that they were each subjected to an array of improper conduct by Selph as a condition of their employment, they were retaliated against by Selph after they reported his inappropriate conduct to other store management personnel, the management personnel to whom they reported Selph's conduct responded ineffectively, and they were ridiculed and embarrassed because Publix and its agents allowed their complaints to be made public. The plaintiffs further claimed that Publix was aware of Selph's behavior via the managers and supervisors in store 118, Publix was ineffective in curtailing the bad conduct, and, after transferring Selph from store 118, Publix allowed the plaintiffs' complaint to become public,

---

If any of us believe that he or she is being subjected to any of these forms of harassment, or believes he or she is being discriminated against because other associates are receiving favored treatment in exchange for, (example—sexual favors), he or she must bring this to the attention of appropriate persons in Company Management   The very nature of harassment makes it virtually impossible to detect unless the person being harassed registers his or her discontent with the appropriate Company representative.  Consequently, in order for the Company to deal with the problem, *we must report such offensive conduct or situations to the Store Manager, District Manager or Divisional Personnel Managers*:

[list of individuals and telephone numbers by location]

A record of the complaint and the findings will become a part of the complaint investigation record and the file will be maintained separately from the associate's personal file.

Any person electing to utilize this complaint resolution procedure will be treated courteously   The complaint will be handled as swiftly and as confidentially as practical in light of the need to remedy the problem, and registering the complaint will in no way be used against the associate nor will it have adverse impact on the individual's employment status.

R2–67 Ex. 4 at 2–4

5. Publix's "Open Door Policy," as set forth in the employee handbook, provides the following:

It is just a fact of life that occasionally there will be problems and misunderstandings among people.  If something bothers you, or if you need clarification of a Publix policy or procedure, please talk to a manager about it.  Always remember, as a Publix associate you can talk to anyone in management.  Experience has shown, however, that many problems can best be worked out by the following steps:
1. Discuss you problem or raise your question directly with your immediate Supervisor/Manager/Department Head.
2. If the matter is not resolved or you still have a question or concern, go to the next highest level of management (for example, Store Manager, District Manager, Regional Director of Retail Operations, or a Vice–President).

Just remember—you can discuss your problem with anyone in management all the way to the top level.  Also, your Divisional Human Resources Department is available to assist you with any matter at any time, any you may contact the Employee Assistance Department in Lakeland for confidential counseling.

R2–67–Ex. 4 at 1–2 (emphasis omitted).

6. The plaintiffs also alleged violation of the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes, battery, intentional infliction of emotional distress, and invasion of privacy.  Only the claims regarding Publix's alleged violation of Title VII are at issue in this appeal; therefore, we will not discuss the plaintiffs other allegations.

thereby exposing them to further ridicule, embarrassment, and retaliation. The plaintiffs asserted that they had both suffered damages in the form of lost income and benefits, as well as nightmares and migraines. Additionally, Madray claimed she was demoted, scheduled to work fewer hours, and her schedule was changed to be less convenient for her family as a result of complaints against Selph.

Publix moved for summary judgement, arguing that it was not liable for Selph's conduct because it had a well-disseminated anti-harassment policy in force and it responded immediately to the plaintiffs' complaints. Selph also moved for summary judgment, adopting Publix's arguments and further asserting that the facts as set forth by the plaintiffs failed to satisfy the requirements for the state law claims of battery and invasion of privacy. The plaintiffs replied that Publix should be considered to have had notice of Selph's behavior beginning with Holden's initial complaint to Second Assistant Manager Darlene Clark, as much as six months prior to the initiation of District Manager Rhodes' investigation. Therefore, the plaintiffs argued that Publix's response to the plaintiffs' complaints could not be considered prompt.

The district court concluded that Publix was not liable for Selph's alleged harassment because Publix had exercised reasonable care to prevent sexual harassment by promulgating an anti-harassment policy, of which the plaintiffs were aware, and Publix responded promptly and effectively to stop the alleged harassment once the plaintiffs utilized the policy's established reporting procedures. The district court found that the plaintiffs failed to follow the procedures established by Publix's sexual harassment policy because they were afraid of potential negative consequences. The court further found that it was unreasonable for the plaintiffs not to take advantage of the preventive and corrective procedures developed by Publix because Publix's policy was unambiguous and the plaintiffs admitted that they knew and understood the sexual harassment policy. The district court noted that "[t]o permit an employee to disregard a policy of which she was admittedly aware based on generalized fears would require an employer to be automatically liable for harassment committed by a supervisor." R4–144 at 10–11. Accordingly, the district court granted Publix's motion for summary judgment on the plaintiffs' claims for hostile work environment sexual harassment and dismissed the plaintiff's federal claims with prejudice.[7]

## II. DISCUSSION

We review the district court's order granting summary judgment *de novo*. *See Williams v. Vitro Services Corp.*, 144 F.3d 1438, 1441 (11th Cir.1998). A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find

---

7. The district court also granted Selph's motion for summary judgment regarding the Title VII claims because the relief available under Title VII is against the employer, not the alleged harasser. Additionally, the district court declined to exercise supplemental jurisdiction over the plaintiffs' state law claims for battery, invasion of privacy, and violation of the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes and dismissed those claims without prejudice. The plaintiffs do not appeal these actions.

for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). In making this assessment, we "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997), and "resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. v. Sun Life Ins. Co.*, 894 F.2d 1555, 1558 (11th Cir.1990).

[2, 3] In 1998, the Supreme Court delivered two opinions which provided increased guidance on the circumstances under which an employer should be found vicariously liable for the hostile work environment created by a supervisory employee's sexual harassment. *See Burlington Indus.*, 524 U.S. at 755–765, 118 S.Ct. at 2265–70; *Faragher*, 524 U.S. at 785–808, 118 S.Ct. at 2282–93. In these cases, the Supreme Court utilized common law agency principles to establish that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher*, 524 U.S. at 807, 118 S.Ct. at 2292–93; *see also Burlington Indus.*, 524 U.S. at 765, 118 S.Ct. at 2270. However, the Supreme Court also created an affirmative defense providing employers a safe harbor from vicarious liability when the victimized employee suffered no adverse tangible employment action. *Id.* at 807, 118 S.Ct. at 2293; *see also Burlington Indus.*, 524 U.S. at 765, 118 S.Ct. at 2270. The employer must satisfy two elements to successfully interpose this defense: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.; see also Burlington Indus.*, 524 U.S. at 765, 118 S.Ct. at 2270.

The district court concluded that Publix had fulfilled the requirements of the first element of the *Faragher* affirmative defense by promulgating the anti-harassment policy and then acting promptly to stop Selph's harassment once the plaintiffs complained to Rhodes. Next, the district court determined that the second element had been satisfied by the plaintiffs' failure to contact any of the individuals identified for reporting offensive conduct or situations by Publix's "Statement Concerning Prohibited Harassment, Including Sexual Harassment."

On appeal, the plaintiffs argue that Publix does not meet the requirements for the *Faragher* affirmative defense. First, the plaintiffs assert that Publix's "Statement Concerning Prohibited Harassment, Including Sexual Harassment" does not demonstrate that Publix "exercised reasonable care to prevent such harassment" because the policy is too narrow and identifies only one person in each store, the store manager, as available to address sexual harassment complaints. Additionally, the plaintiffs suggest that the failure of the mid-level managers to whom they complained to respond demonstrates that Publix failed to take reasonable care to prevent harassment in its stores. Second, the plaintiffs contend that Publix did not respond promptly to correct Selph's sexually harassing behavior. The plaintiffs assert that Publix should be considered to have had notice of Selph's harassing behavior when they first complained to Second Assistant

Manager Darlene Clark months before District Manager Rhodes undertook his investigation and remedial action. Therefore, Rhodes' actions cannot be considered a prompt corrective response. Finally, the plaintiffs argue that their decision to report Selph's harassing behavior to the mid-level managers within store 118, rather than the individuals delineated in Publix's sexual harassment policy, was not unreasonable given Publix's Open Door Policy which encouraged employees to talk to "anyone in management" regarding problems and further recommended that employees first discuss these problems with their "immediate Supervisor/ Manager/ Department Head." R2-67-Ex.4 at 1-2. We will address each of these arguments in turn.[8]

### A. *Employer's Reasonable Care To Prevent Sexual Harassment*

[4, 5] When crafting the first prong of the *Faragher* affirmative defense which requires, in part, that the employer exercise reasonable care to prevent sexual harassment, the Supreme Court sought to give effect to Title VII's deterrent purpose. *See Faragher*, 524 U.S. at 806, 118 S.Ct. at 2292 ("It would therefore implement clear statutory policy and complement the Government's Title VII enforcement efforts to recognize the employer's affirmative obligation to prevent violations and give credit here to employers who make reasonable efforts to discharge their duty."); *Burlington Indus.*, 524 U.S. at 764, 118 S.Ct. at 2270 (noting that making employer liability contingent "in part on an employer's effort to create [antiharassment policies and effective grievance] proce-

dures, ... would effect Congress' intention to promote conciliation rather than litigation in the Title VII context, and the EEOC's policy of encouraging the development of grievance procedures") (citation omitted). Accordingly, the Supreme Court implied that employers could meet the initial burden in determining whether they had exercised reasonable care to prevent sexual harassment by promulgating an anti-harassment policy. *See Faragher*, 524 U.S. at 807, 118 S.Ct. at 2293 ("While proof that an employer had promulgated an antiharassment policy with complaint procedures is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense."); *see also Burlington Indus.*, 524 U.S. at 765, 118 S.Ct. at 2270. The Supreme Court further determined, when applying the new affirmative defense, that dissemination of an employer's antiharassment policy was fundamental to meeting the requirement for exercising reasonable care in preventing sexual harassment. *See Faragher*, 524 U.S. at 808, 118 S.Ct. at 2293 (noting that it appeared the defendant employer would be unable to utilize the affirmative defense because it "had entirely failed to disseminate its policy against sexual harassment among [its] ... employees"). There is no dispute that Publix promulgated and effectively disseminated complaint procedures as a part of its sexual harassment policy. Rather, the plaintiffs contend that Publix did not exercise reasonable care to prevent the supervisor's harassing behavior

---

8. Although Madray initially claimed that she was demoted, scheduled to work fewer hours, and that her schedule was changed to be less convenient to her family, the plaintiffs do not argue on appeal that they suffered any adverse, tangible employment action. Therefore, we do not address this issue. *See Maloney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1345 (11th Cir.1999) (stating that issues not argued on appeal are deemed abandoned), *petition for cert. filed*, —— U.S.L.W. —— —, (U.S. Feb. 23, 2000) (No. 98-2610).

because the complaint procedures in Publix's sexual harassment policy identify only one person in an employee's store who can be contacted regarding sexual harassment, the store manager.

[6] We recognize that the wide variety of employment settings make it difficult to establish a uniform test for determining whether an employer's anti-harassment policy complaint procedures demonstrate the employer's reasonable care in preventing sexual harassment. The employer's size, location, geographic scope, organizational structure, and industry segment are just some of the characteristics that impact the analysis of whether the complaint procedures of an employer's anti-harassment policy adequately fulfill Title VII's deterrent purpose. Nonetheless, the Supreme Court did provide some guidance regarding the minimum requirement for an anti-harassment policy's complaint procedures to be considered effective. The Court noted that Title VII's deterrent purpose was clarified by a 1990 policy statement from the Equal Employment Opportunity Commission (EEOC) "enjoining employers to establish a complaint procedure 'designed to encourage victims of harassment to come forward [without requiring] a victim to complain first to the offending supervisor.'" *Faragher*, 524 U.S. at 806, 118 S.Ct. at 2292 (quoting EEOC Policy Guidance on Sexual Harassment, 8 FEP Manual 405:6699 (March 19, 1990)) (alteration in original); *see also Burlington Indus.*, 524 U.S. at 764, 118 S.Ct. at 2270 (citing EEOC Policy Guidance on Sexual Harassment, 8 BNA FEP Manual 405:6699 (March 19, 1990)). Publix's sexual harassment policy meets the standard established by the EEOC's 1990 policy statement by providing to employees alternative avenues for lodging a complaint other than a harassing supervisor. Although the store manager was the only designated company representative located within each store and, in this case, was the alleged harasser, Publix's policy also designated several additional individuals to whom an employee could complain regarding harassment.

These other designated, appropriate company representatives were accessible to Publix's store employees. District Manager Rhodes visited store 118 at least once each week and phone numbers, including a toll-free phone number, were provided for other appropriate company representatives to whom an employee could complain about a supervisor's sexual harassment. *See Shaw v. AutoZone, Inc.*, 180 F.3d 806, 812 (7th Cir. 1999) (concluding that a sexual harassment policy was reasonable when the offending supervisor's immediate supervisor "visited the store approximately every two to three weeks"), *cert. denied*, —— U.S. ——, 120 S.Ct. 790, 145 L.Ed.2d 666 (2000). Additionally, the Publix complaint procedures provided employees multiple avenues for lodging a sexual harassment complaint outside the supervisory chain of command. *See id.* at 811–812 (finding a sexual harassment policy to be reasonable when it made it clear that sexual harassment would not be tolerated, was both specific and detailed, provided multiple mechanisms for the prompt resolution of complaints, and allowed the complainant to circumvent the supervisory chain of command). Therefore, we conclude that the complaint procedures established by Publix's sexual harassment policy meet the minimum requirements for the *Faragher* affirmative defense because the procedures did not require that the employee complain to the offending supervisor or through the supervisor's chain of command and the procedures provided multiple avenues of lodging a complaint to assessable, designated representatives.

Moreover, the complaint procedures established by Publix's sexual harassment policy are similar to those in the policy we found to be reasonable in *Coates v. Sundor Brands,* 164 F.3d 1361, 1364 (11th Cir.1999) (per curiam). *See id.* at 1369 (concluding that the policy directing employees who have been sexually harassed to "immediately contact their line manager, Personnel Contact, or other manager with whom they feel comfortable" was a reasonable policy). Similarly, our sister circuits have found more narrowly drawn anti-harassment policies to satisfy the requirement that an employer exercise reasonable care to prevent sexual harassment. *See Montero v. Agco Corp.,* 192 F.3d 856, 862 (9th Cir.1999) (finding that promulgation of a policy which identified only an employee's supervisors and the company's Human Resources Department as the appropriate vehicles for registering a sexual harassment complaint and dissemination of that policy to employees satisfied the requirement that an employer exercise reasonable care to prevent sexual harassment); *see also Watkins v. Professional Security Bureau, Ltd.,* 201 F.3d 439 (4th Cir.1999) (per curiam) (concluding a policy was reasonable when employee was not placed in the position of having to report their supervisor's conduct to someone in the supervisors's chain of command); *Ritchie v. Stamler Corp.,* No. 98-5750 (6th Cir. Jan. 12, 2000) (per curiam) (finding a policy which only allowed sexual harassment complaints to be made in writing to the president of the company reasonable).[9]

Therefore, because we find no inherent defect in the complaint procedures established by Publix's sexual harassment policy, nor any evidence that the policy was administered in bad faith, we find that Publix exercised reasonable care to prevent sexual harassment. *Cf. Brown v. Perry,* 184 F.3d 388, 396 (4th Cir.1999) (noting that where "there is no evidence that an employer adopted or administered an antiharassment policy in bad faith or that the policy was otherwise defective or dysfunctional, [its] existence ... militates strongly in favor of a conclusion that the employer 'exercised reasonable care to prevent' and promptly correct sexual harassment") (quoting *Faragher,* 524 U.S. at 807, 118 S.Ct. at 2293).

### B. *Employer's Reasonable Care To Correct Promptly Sexual Harassment*

In applying the *Faragher* affirmative defense, we have noted that "the employer's notice of the harassment is of paramount importance [because] if the employer had notice of the harassment ... then it is liable unless it took prompt corrective action." *Dees v. Johnson Controls World Services,* 168 F.3d 417, 422 (11th Cir.1999). Therefore, we must determine when Publix had notice of Selph's harassing behavior in order to evaluate the alacrity of its response.

[7] This inquiry is facilitated by the identification of the "appropriate Company representative" to whom employees should register their complaints in the Publix's sexual harassment policy. R2-67-Exh. 4 at 2-4. Publix required that its employees report harassing behavior to either the Store Manager, District Manager, or Divisional Manager and went so far as to list the names and phone numbers for some of the appropriate company representatives in various locations. *See id.* Therefore, by this policy, Publix established that when one of the delineated

---

9. These are unpublished opinions cited solely for their persuasive value pursuant to 4th Cir R 36(c) and 6th Cir R 28(g), respectively.

"appropriate Company representatives" was contacted regarding harassment, it then had been given notice sufficient to obligate it to make a prompt corrective response. *See Coates,* 164 F.3d at 1364 (noting that when an employer's sexual harassment policy clearly specifies the steps an employee should take to alert the employer of sexual harassment, the employer has, by the policy, "itself answered the question of when it would be deemed to have notice of the harassment sufficient to obligate it or its agents to take prompt and appropriate remedial measures").

[8] The plaintiffs contend that Publix should be deemed to have been on notice prior to their meeting with District Manager Rhodes, an appropriate company representative, via their complaints to various mid-level managers, not designated as appropriate company representatives by the anti-harassment policy. However, as we have noted, once an employer has promulgated an effective anti-harassment policy and disseminated that policy and associated procedures to its employees, then "it is incumbent upon the employees to utilize the procedural mechanisms established by the company specifically to address problems and grievances." *Farley v. American Cast Iron Pipe,* 115 F.3d 1548, 1554 (11th Cir.1997). *See also Young v. Bayer Corp.,* 123 F.3d 672, 674 (7th Cir. 1997) (noting that when an employer has identified and appointed a recipient for sexual harassment complaints, "complainants can be expected to utilize it"). Therefore, we conclude that Publix cannot be considered to have been placed on notice of Selph's harassing behavior by the plaintiffs' informal complaints to individuals not designated by Publix to receive or process sexual harassment complaints.

Moreover, even if we considered the mid-level managers to whom the plaintiffs complained agents of Publix placing it on notice of Selph's behavior, the context surrounding the plaintiffs' comments to these individuals compels the conclusion that these mid-level managers could not reasonably have been expected to act to address the plaintiffs' complaints. *Cf. Coates,* 164 F.3d at 1365 (concluding that an employer has not been given adequate notice of sexual harassment to require action when an employee provided to an appropriate company representative a harassing note she received from her supervisor, but did not indicate that the note "represented a problem about which she was concerned or that required [the manager's] immediate attention," or "that the note was only the latest in an on-going pattern of sexually harassing behavior," and "the primary purpose for seeking out [the manager] was to discuss not the harassment," but other matters).

### 1. *Conversation with Darlene Clark*

[9] Holden complained to Second Assistant Manager Clark at a restaurant during a party for a departing employee. She only told Clark that Selph's behavior "made me sick." R3–82 at 58. Nothing Holden said to Clark disclosed the extent or precise nature of Selph's behavior towards Holden. Clark could not have been expected to take corrective action on the basis of this informal, general complaint.

### 2. *Conversations with Gary Priest*

[10] Holden next complained to Second Assistant Manager Priest while eating dinner in a restaurant with several other employees. Here, she relayed a particular incident where she found Selph's behavior offensive. Holden did not indicate that this incident was

part of an on-going pattern of sexually harassing behavior or that she wanted Priest to take action to stop Selph's inappropriate behavior. Again, Priest could not have been expected to take action to address the singular incident recounted by Holden during a dinner gathering.

Additionally, Holden asserts that approximately three or four days before she lodged a formal complaint, Priest witnessed Selph's harassment of Holden. Again, the deposition testimony suggests that at that time Priest knew of only two occasions where Selph behaved inappropriately towards Holden—the one incident described by Holden during dinner and the incident he witnessed. Knowledge of these two isolated incidents is not sufficient to indicate Priest should have known Selph was engaging in a consistent pattern of harassment towards Holden or to create a reasonable expectancy that he would take corrective action against Selph. Moreover, when Priest witnessed the subsequent incident where Selph hugged Madray, Priest did take action, indicating that they needed to speak with District Manager Rhodes.

### 3. *Discussion with David Neff*

[11] After Bakery Manager Neff witnessed Selph's harassment of Holden, Holden assured him that she would report Selph's behavior to Publix through District Manager Rhodes, one of the appropriate company representatives designated in Publix's sexual harassment policy. The communication between Neff and Holden demonstrates that Holden knew and understood Publix's established procedure for reporting sexual harassment and intended to lodge the formal complaint herself rather having Neff take action. Neff could not reasonably be expected to take corrective action when Holden insisted that she would contact District Manager Rhodes herself to inform him of Selph's behavior towards her.

Nothing in the plaintiffs' complaints to mid-level managers prior to their meeting with Rhodes indicates that these managers' failure to take prompt action to stop Selph's harassment was unreasonable. Neither plaintiff fully explained the full dimensions of their harassment by Selph to the mid-level managers or approached these mid-level managers in a professional capacity to request assistance with correcting Selph's behavior. Therefore, we conclude that Publix did not have adequate notice of Selph's harassing behavior through the mid-level managers. Publix can first be charged with notice of Selph's behavior when the plaintiffs requested a meeting with District Manager Rhodes. The plaintiffs do not dispute that Rhodes responded promptly to end their harassment by Selph. Accordingly, we find that Publix did exercise reasonable care to correct promptly Selph's sexually harassing behavior.

### C. *Employee's Reasonable Use of Preventative or Corrective Opportunities*

[12] "[W]hile proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the [affirmative] defense." *Faragher,* 524 U.S. at 807–808, 118 S Ct. at 2293; *see also Burlington Indus.,* 524 U.S. at 765, 118 S.Ct. at 2270. The plaintiffs admit that they knew the appropriate complaint procedures and understood whom they should contact according to Publix's sexual harassment policy. Their understanding of these procedures was illustrated by Holden's response to Bakery Man-

ager Neff that she would contact District Manager Rhodes to lodge a complaint against Selph after Neff witnessed Selph's harassing behavior. Yet, despite knowing exactly who they should contact regarding sexual harassment, the plaintiffs chose to complain informally to managers that were not authorized to receive such complaints under the Publix sexual harassment policy.

[13] The plaintiffs contend that they chose to complain to the mid-level managers within store 118 in accordance with Publix's Open Door Policy. Therefore, they assert that their decision to discuss Selph's behavior with these managers, rather than those individuals identified by the sexual harassment policy, was not unreasonable and that they reasonably took advantage of preventative and corrective opportunities Publix made available—the Open Door Policy. The district court concluded that the plaintiffs had not adequately followed the procedures of the Open Door Policy to satisfy their duty to report Selph's sexually harassing behavior because that policy requires that "if a problem is not resolved, the employee should go to the next highest level of management, to the top level if necessary." R4–144 at 10. While we note that "[a]n employer cannot use its own policies to insulate itself from liability by placing an increased burden on a complainant to provide notice beyond that required by law," we, nonetheless, conclude that the plaintiffs failed to reasonably utilize the complaint procedures provided by Publix's Open Door Policy. *Williamson v. City of Houston,* 148 F.3d 462, 467 (5th Cir.1998); *see also Distasio v. Perkin Elmer Corp.,* 157 F.3d 55, 65 (2nd Cir.1998) (rejecting the argument that an anti-harassment policy can create "an affirmative duty [for the plaintiff] to bring her allegations to the company's attention in more than one way when she believes the company's response to her harassment claim is inadequate.... When a plaintiff reports harassing misconduct in accordance with company policy, she is under no duty to report it a second time before the company is charged with knowledge of it."). The plaintiffs complained to the mid-level managers within store 118 during informal, often social, circumstances. They did not fully inform the mid-level managers of the extent of the harassment Selph directed towards them, nor did they request that the mid-level managers take any action to stop Selph's harassment. In fact, on at least one occasion the plaintiffs declined the assistance of a mid-level manager and insisted that they would take action themselves in accordance with the sexual harassment complaint procedures. Therefore, we can find no basis upon which a reasonable fact-finder could conclude that the plaintiffs reasonably availed themselves of the preventive and corrective opportunities provided by either Publix's sexual harassment policy or its Open Door Policy.

As we have noted, "the problem of workplace discrimination ... cannot be [corrected] without the cooperation of the victims." *Coates,* 164 F.3d at 1366. Here, we conclude that the plaintiffs unreasonably delayed utilizing the complaint procedures established by Publix's sexual harassment policy and they concede that Publix responded promptly once they cooperated by providing the company notice via its established complaint procedures. *Cf. Montero,* 192 F.3d at 863 (finding an employee's delay in utilizing an employer's established complaint procedures equated to unreasonably failing to take advantage of the company's preventive and corrective opportunities). Therefore, we conclude that the second prong of the *Faragher* affirmative defense is satisfied with regard to Publix's vicarious liability before District Manager Rhodes was notified of Selph's behavior.

### III. CONCLUSION

Publix promulgated an effective sexual harassment policy with appropriate complaint procedures, disseminated this information to its employees, and made a good-faith effort to enforce the policy; therefore, Publix satisfied the standards for exercising reasonable care to prevent sexual harassment. As a result, Publix cannot be charged with notice of the harassment via the plaintiffs' earlier, informal complaints to mid-level managers within their store who were not designated to receive complaints of sexual harassment under Publix's anti-harassment policy. Publix responded promptly to correct the alleged harassment when it received effective notice by the plaintiffs' complaints to a designated, appropriate company representative. Finally, the plaintiffs acted unreasonably in delaying their use of the complaint procedures established by Publix. Therefore, we conclude that Publix is entitled to interpose the affirmative defense established in *Faragher* and *Burlington Indus.* to eliminate its vicarious liability for the sexual harassment the plaintiffs experienced. Accordingly, we AFFIRM the decision of the district court.

A True Copy - Attested:
Clerk, U.S. Court of Appeals
Eleventh Circuit
By: *Lisa D. Hesler*
Deputy Clerk
Atlanta, Georgia